17 F.3d 1435
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-appellee,
v.
Mack Ray LITTLE, Defendant-Appellee.
United States of America, Plaintiff-Appellee,
v.
Mack Ray Little, Defendant-Appellant.
 Nos. 93-5258, 93-6923.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 27, 1993.
Decided Feb. 16, 1994.
 
 Appeals from the United States District Court for the Eastern District of North Carolina, at Wilmington. W. Earl Britt, District Judge; William L. Osteen, Sr., District Judge, sitting by designation. (CR-92-27-CR-BR)
 George Alan DuBois, Jr., Assistant Federal Public Defender, Raleigh, N.C., for appellant.
 David Paul Folmar, Jr., Assistant United States Attorney, Raleigh, N.C., for appellee.
 James R. Dedrick, United States Attorney, Raleigh, N.C., for appellee.
 E.D.N.C.
 AFFIRMED IN PART AND VACATED AND REMANDED.
 Before PHILLIPS and WILKINSON, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 These are consolidated appeals.
 
 
 2
 In No. 93-5258, Mack Ray Little appeals his conviction for bank robbery in violation of 18 U.S.C. Sec. 2113(a) on the grounds that the district court erred in failing to suppress eyewitness identification testimony, in admitting certain "other acts" evidence, in refusing to admit the testimony of an expert on behalf of Little, and in allowing the jury to resume deliberations after its request to view certain evidence could not be satisfied immediately. We affirm the conviction.
 
 
 3
 In No. 93-6923, he appeals the district court's denial, for lack of jurisdiction, of his motion for a new trial on the basis of newly discovered evidence. We remand that motion for consideration by the district court.
 
 
 4
 * The details of the bank robbery are relatively simple. On August 6, 1992, a black man wearing a hat and sunglasses entered the United Carolina Bank (UCB) in Whiteville, North Carolina. He approached one of the tellers, Kitty Jo Norris, and handed her a note which read "Ma'am, don't make me kill you. Give me all your money." Norris complied with the demand by giving the man about two thousand dollars, including two hundred dollars worth of "bait bills" whose serial numbers had been previously recorded. The man left the bank on foot.
 
 
 5
 Events later that day led to the arrest of Mack Ray Little for the robbery. Three men, none of whom was Little, were riding in a truck belonging to Little. Police stopped the vehicle and searched one of the men, Larry Wideman. The officers discovered that Wideman was in possession of four hundred dollars, ninety dollars of which were bait bills from the UCB robbery. Wideman eventually informed the police that his cousin, Little, had given him the money earlier that day and instructed him to tell anyone who asked that they had been together all morning. Soon afterwards, Little was arrested and charged with the robbery of UCB. Over Little's objection that the evidence was inadmissible under Fed.R.Evid. 404(b), Wideman testified at trial that several days before the UCB robbery, Little told him that he had previously robbed a bank in Chadbourn, North Carolina by "dropp[ing] a note and [running] off." JA 184-95. The district court found the evidence admissible to show modus operandi or plan. JA 185-86, 190.
 
 
 6
 Police interviewed several eyewitnesses in connection with the robbery. In particular, Norris was shown a group of six photos which included a picture of Little. Norris could not identify the robber from the photo-spread, nor did she identify Little as the robber at trial. Gay Scott, a teller working beside Norris at the time of the robbery, identified Little from a photo-spread as the man who robbed the bank.
 
 
 7
 Investigators also spoke with Helen Pittman, a customer at the drive-up window on the day of the robbery. While at the drive-up window, Pittman and her passenger, Roslyn Powell, observed a man approach the bank and later run from the bank. Two days after this incident, Pittman saw a report on television about the UCB robbery. The broadcast identified Little as a prime suspect and displayed his photograph. At that time, Pittman did not recognize the photograph of Little as the man she observed at the bank, but she informed the police that she might have witnessed part of the robbery. About two weeks later, Pittman identified Little from a photo-spread as the man she saw approach and then run from the bank. The pictures in the photo-spread were in-color, facial shots, whereas the television report showed a black and white photograph of Little from the waist up. See JA 18, 20-21, 135. Police also interviewed Pittman's companion, Roslyn Powell, but she could not identify Little as the man she had seen at the bank.
 
 
 8
 Before trial, Little moved to suppress the identification testimony of Pittman on the grounds that there was a substantial likelihood of irreparable misidentification. Little argued that the identification was tainted because Pittman had seen Little's picture on television before she identified him from the photo-spread. JA 9-10. According to Little, her description varied in several important aspects from the description given by other witnesses. She had a poor opportunity to observe the robber's face. Further, Little was the only person in what could have been recognized as prison garb in the police photo-spread.[1] The district court denied the motion, stating that after reviewing the factors set out in Neil v. Biggers, 409 U.S. 188 (1972), it found "the matter is one of weight to be considered by the jury." JA 76. The court continued,
 
 
 9
 [T]he witness had an opportunity to view the person both going in and coming out of the bank, although admittedly she wasn't paying ... strict attention to him.
 
 
 10
 She did notice his height and his complexion. She was able to give a description, which at least coincided with that of another witness at the same time about his clothing. She described that he [possibly] had a ... mustache....
 
 
 11
 In any event, the Court ... sees very great similarities in the description given by the witness as he was seen after the event ... and the actual description of the defendant.
 
 
 12
 JA 76.
 
 
 13
 At trial, Little proffered expert opinion testimony about the factors that influence the accuracy of eyewitness identification. The district court did not permit the expert to testify on the ground that it "would not be of sufficient assistance to the jury ... to warrant the testimony being allowed." JA 302.
 
 
 14
 Little was tried and found guilty of bank robbery by a jury. During its deliberations, the jury asked to view a videotape of the robbery in progress. The court informed the jury that it intended to grant the jury's request, but that it would take approximately two hours to obtain the special equipment needed to play the tape. The court then asked the jury whether it wanted to stop deliberations for the day and continue the following morning, or to continue deliberating until the equipment arrived. The jury chose to continue, and shortly thereafter sent the court a message canceling its request to view the tape. About an hour later, the jury announced that it had reached its verdict.
 
 
 15
 Little's counsel had requested that the jury not be allowed to deliberate further until the videotape equipment could be retrieved. The court had refused this request, but indicated that if the jury did reach a guilty verdict, it would make sure that the failure to produce the tape did not unfairly influence the jury decision. JA 309, 313. The court, however, did not follow up on this after the jury returned its verdict.
 
 
 16
 Finding that Little was a career offender, the court sentenced Little to 235 months imprisonment to be followed by a three-year term of supervised release.
 
 
 17
 This appeal followed.
 
 II
 
 18
 Little raises various evidentiary and procedural issues: whether the district court erred in denying his motion to suppress Pittman's identification testimony; whether the district court erred in refusing to allow expert testimony in the area of eyewitness identification; whether the district court erred by admitting testimony pursuant to Fed.R.Evid. 404(b) that Little stated he had previously robbed another bank; and whether the district court erred by allowing the jury to resume deliberations before its request to view the videotape was not satisfied. We consider Little's assignments of error in turn.
 
 
 19
 * Eyewitness identification should only be excluded from the jury if the identification testimony is "manifestly suspect." Harker v. Maryland, 800 F.2d 437, 443 (4th Cir.1986). The Supreme Court has explained
 
 
 20
 that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so permissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.
 
 
 21
 Simmons v. United States, 390 U.S. 377, 384 (1968). Here we must determine whether, considering the totality of the circumstances, Pittman's exposure to Little's picture on television so tainted the identification process that the admission of her identification testimony violated Little's due process rights. See Stovall v. Denno, 388 U.S. 293, 302 (1967).
 
 
 22
 The inquiry can be divided into two questions: (1) whether the preidentification encounter was unduly suggestive, and even if so, (2) considering the totality of the circumstances, whether there nevertheless were sufficient independent indicia of reliability of Pittman's identification of Little. See United States v. Monsour, 893 F.2d 126, 128 (6th Cir.1990) (citing Neil v. Biggers, 409 U.S. 188, 199-200 (1972)). It is arguable, and we assume for purposes of this appeal, that Pittman's viewing of the television program identifying Little, whose picture was shown, as the robber was unduly suggestive. We nevertheless conclude that although it presents a close question, there exist sufficient independent indicia of reliability so that the district court properly admitted Pittman's testimony.
 
 
 23
 The Supreme Court has summarized the factors to be considered in assessing whether, despite undue suggestiveness, the identification is independently reliable. Biggers, 409 U.S. at 199-200. They are: the witness' opportunity to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of any prior description, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Id.
 
 
 24
 Applying these factors, we note that Pittman demonstrated an average level of certainty about the accuracy of her identification, and that only a few weeks passed between the robbery and the photo-spread identification. Also, although the conditions were not optimal, Pittman did have two opportunities to observe the man outside the bank--when he approached it and then ran from the bank. Powell, Pittman's companion, drew her attention to the man as he ran from the bank. Pittman also accurately estimated the man's height, a factor that could not be discerned from either the picture as shown on television or in the police photo-spread.[2] Finally, Pittman's identification of Little was corroborated by that of Gay Scott. Nothing indicates that Scott's identification of Little was tainted in any way. For these reasons, we conclude that there were sufficient independent indicia of reliability so that no due process violation occurred in admitting Pittman's testimony. The weight and trustworthiness of that testimony was properly left for consideration by the jury. See Manson v. Brathwaite, 432 U.S. 98, 116 (1977).
 
 
 25
 Little also contends that the police photo-spread itself was unduly suggestive because he was pictured in an orange shirt, unlike the persons in the other five photographs. The orange shirt, argues Little, is associated with a prison uniform and suggested his guilt. We disagree. The pictures in the photo-spread were facial shots. Only a small portion of the shirt could be seen, and we do not believe it presented the danger of undue suggestiveness.
 
 B
 
 26
 We next consider whether the district court abused its discretion by refusing to admit expert testimony proffered by Little. Dr. Spurgeon Cole would have testified on Little's behalf about various difficulties inherent in eyewitness identification, such as observation under stress, the difficulties of cross-racial identifications,[3] the lack of correlation between confidence and accuracy regarding identifications, and unconscious transference.[4]
 
 
 27
 Although the psychological aspects of eyewitness identification have sometimes been viewed as an inappropriate subject for expert testimony, we have recognized a recent trend towards admitting such testimony under narrow circumstances. See United States v. Harris, 995 F.2d 532, 534 (4th Cir.1993); see also United States v. Moore, 786 F.2d 1308 (5th Cir.1986). Still, expert testimony is only permitted if it assists the trier of fact in understanding and evaluating the evidence, and the exclusion of such evidence remains within the sound discretion of the trial judge. Harris, 995 F.2d at 534.
 
 
 28
 We find it was within the district court's discretion to exclude Dr. Cole's testimony under Fed.R.Evid. 702. After hearing the proffered testimony of Dr. Cole, the district court determined that, in part because the expert intended to speak in general terms of the difficulties of eyewitness identification and had not heard the witnesses testify his testimony would not be sufficiently helpful to the jury. JA 302. We note that Little's conviction did not rest solely on Scott and Pittman's identification testimony, and that skillful cross-examination was of course available to emphasize some of the weaknesses of Pittman and Scott's identifications that Dr. Cole's testimony was to address. For these reasons, the court's refusal to admit this proffered expert opinion evidence was not an abuse of discretion.
 
 C
 
 29
 Little challenges the admission under Rule 404(b), Fed.R. Evid., of the testimony by Wideman that Little claimed to have previously robbed another bank by "dropp[ing] a note and [running]" to show modus operandi or plan.
 
 
 30
 We review the trial court's decision to admit evidence of "other acts" pursuant to Rule 404(b) under an abuse of discretion standard. United States v. Hadaway, 681 F.2d 214, 217 (4th Cir.1982). In order for such evidence to be admissible, it must be relevant for a purpose other than proof of a defendant's criminal disposition, such as to show plan and identity. Fed.R.Evid. 404(b). Three additional requirements must be satisfied: (1) the evidence must be necessary to prove an element of the crime with which the defendant has been charged; (2) the evidence must be reliable; and (3) as required by Fed.R.Evid. 403, the danger of unfair prejudice must be substantially outweighed by the probative value of the relevant evidence. See United States v. Hernandez, 975 F.2d 1035, 1039 (4th Cir.1992); United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir.1988).
 
 
 31
 We believe the district court did not abuse its discretion in admitting this evidence to show modus operandi or plan. Although it may well lie at the outer boundaries of evidence admissible for that purpose, the evidence here revealed a mode of operation sufficiently similar to that employed by the UCB robber to meet the relevance requirement.[5] Its necessity, in view of the challenges being made to the trustworthiness of the eyewitness identifications, cannot fairly be questioned. There is no indication that Wideman's testimony was unreliable; Wideman had not been charged with any crime and was in fact related to Little. Finally, we cannot find any abuse of discretion in the district court's determination in application of Rule 403 that the probative value of this evidence was not substantially outweighed by the risk of unfair prejudice. We therefore find no error in the district court's admission of Wideman's testimony.
 
 D
 
 32
 Finally, we address Little's contention that the district court's actions during jury deliberations amount to error requiring a new trial. Little argues that the district court pressured the jury to reach a decision without the aid of the videotape it had requested. See Brief for Appellant at 38-39. Although such coercion, if it had occurred, might require a new trial, Cf. United States v. McDonald, 935 F.2d 1212, 1222 (11th Cir.1991); Spalla v. Foltz, 788 F.2d 400, 405 (6th Cir.), cert. denied, 479 U.S. 935 (1986), we are satisfied that the district court's communications did not involve any coercion or pressure, intentional or unintentional. The court clearly informed the jury that it intended to make every effort to comply with its request and explained the difficulties. The jury was free to proceed as it wished. Unfortunately the equipment was unavailable and that fact may have encouraged the jury to forge ahead without the aid of the videotape, but we cannot conclude that any undue pressure to do so was exerted by the district court.
 
 
 33
 It is also unfortunate that the district court did not follow through on its intention to question the jury as to whether it felt the absence of the videotape influenced its verdict. However, no request was made for such an inquiry following return of the verdict and we cannot find an abuse of discretion warranting a new trial under these circumstances.
 
 III
 
 34
 While his direct appeal (No. 93-5258) was pending, Little moved the district court for a new trial under Fed.R.Crim.P. 33 on the grounds of newly discovered evidence. No. 93-6923 is an appeal from the district court's denial of that motion on the basis that it lacked jurisdiction to entertain the motion because an appeal on the merits was pending. United States v. Little, No. 92-27-01-CR-7-BR (E.D.N.C. Aug. 18, 1993). The court erred in this. Although Little's direct appeal was pending in this court, the district court had jurisdiction to entertain the motion and either deny the motion on the merits, or certify to this court its intention to grant the motion. United States v. Cronic, 466 U.S. 648, 667 n. 42 (1984); see Fed.R.Crim.P. 33 ("A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case.") Accordingly, we will vacate the order denying the motion and remand for consideration of the motion as one now before the district court with no appeal pending.[6] In doing so, we of course express no opinion on the merits of the motion.
 
 
 
 [1]
 Little wore an orange shirt in the photo-spread. JA 43-44
 
 
 [2]
 Pittman described the man as 6' 2" to 6' 4"; Little is 6 3" to 6' 4" tall. JA 13, 56
 
 
 [3]
 Here we note that although Gay Scott is white, both Helen Pittman and Little are black
 
 
 [4]
 "Unconscious transference occurs when a witness confuses a person seen in one situation with someone seen in a different situation." United States v. Harris, 995 F.2d 532, 535 n. 2 (4th Cir.1993)
 
 
 [5]
 Little argues that "dropp[ing] a note and [running]" is essentially a "generic way to rob a bank." Brief for Appellant at 33. Admittedly not the paradigm of a "signature crime," we nevertheless believe this evidence passes muster. Although the UCB robber's approach may have been a simple one, it was the same simple approach employed at the Chadbourn bank approximately a week earlier and twelve miles away
 
 
 [6]
 Although upon remand a final appellate judgment affirming the conviction will have been entered, the motion will yet be timely even if considered then newly filed in the district court. See Fed.R.Crim.P. 33 (motion may be made within two years after final judgment); United States v. Cook, 705 F.2d 350, 351 (9th Cir.1983) (two-year period begins to run when appellate court issues its mandate of affirmance)