**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Francis MONSOUR, Defendant–Appellant.**

No. 89–1263.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 28, 1989.

Decided Jan. 9, 1990.

---

David Debold (argued), Office of the U.S. Atty., Detroit, Mich., for plaintiff-appellee.

Anthony T. Chambers, Miriam L. Siefer (argued), Federal Public Defenders Office, Detroit, Mich., for defendant-appellant.

Before MILBURN and GUY, Circuit Judges, and LIVELY, Senior Circuit Judge.

PER CURIAM.

Defendant, Francis Monsour, appeals after being convicted by a jury of unarmed bank robbery. 18 U.S.C. § 2113(a). The primary issue at trial was the identification of defendant as the bank robber. Defendant argues that the bank teller who identified him had been subjected to an unduly suggestive out-of-court identification procedure which fatally tainted the teller's in-court identification. We disagree.

Defendant also argues that prior "bad acts" testimony was improperly received pursuant to Fed.R.Evid. 404(b). Upon review, we find no error in admitting the complained of testimony.

Defendant's last assignment of error is that the "acceptance of responsibility" provision in the Sentencing Guidelines is unconstitutional as applied to him. We find this contention lacking in merit, and we will affirm the conviction.

I.

On December 8, 1987, the Livonia, Michigan, branch of the Standard Federal Savings & Loan was robbed by a lone male. The teller who was robbed, Geraldine Wozniak, had three to four minutes to observe the robber who was wearing a baseball hat, but not otherwise disguised. After the robbery, Mrs. Wozniak gave a description of the robber's race, height, weight, cloth-

ing, complexion, hair, facial hair, and tone of voice. She was certain about the color of his jacket. Two days later, she saw the bank surveillance photographs and pointed out the robber in them. Wozniak was later shown a six-person, non-suggestive photo spread which contained a picture of the defendant but without the beard and mustache he had at the time of the robbery. Wozniak made a "looks like" identification of the defendant, and was sure that none of the other five persons in the photo spread was the robber.

Sometime after the bank robbery and after Wozniak had viewed the photo spread, the defendant was arrested on an unrelated charge. At that time, he was photographed with his beard. This photo appeared in a local newspaper. The accompanying article indicated that the defendant was also linked to the Standard Federal robbery. A co-worker of Wozniak, as well as an FBI case agent, called this photo to Wozniak's attention. Upon seeing the photo, she was positive it was the man who had committed the robbery. Wozniak later identified defendant during the trial.

Under these facts, we would find error in Wozniak's identification of the defendant only if we were to conclude that the viewing of the newspaper photo was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). The analysis of the "impermissibly suggestive" issue involves two inquiries. The first inquiry is whether the viewing of the newspaper photo was unduly suggestive. If so, the second inquiry is whether, under the totality of the circumstances, there was sufficient independent indicia of the reliability of Wozniak's identification of Monsour as the bank robber. *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir.1986), *cert. denied*, 482 U.S. 918, 107 S.Ct. 3196, 96 L.Ed.2d 683 (1987).

■ We need spend little time on the first inquiry, because we agree with the defendant that the copy that accompanied the news photo in addition to the manner in which Wozniak's attention was directed to the photo made it suggestive. We conclude, however, that there was sufficient independent indicia of reliability to keep the identification from becoming fatally tainted. Wozniak had been a bank teller for a number of years and had been through at least one other robbery. She also had training in what to do in case of a robbery, with emphasis on observation of the robber. There was ample opportunity during the robbery to observe the robber who had made no special effort to disguise his appearance. The description Wozniak gave right after the robbery was essentially accurate, and she picked out the robber from surveillance photos two days later. These facts, coupled with her making a "looks like" identification from the six-person photo spread, provide an ample independent basis for her identification of defendant.

## II.

■ The defendant also claims that it was error to allow a bank security guard, Couch, to testify that the person in the robbery surveillance films was the same person he saw acting suspiciously eight days earlier at another nearby branch of the bank that was robbed. In support of this claim, defendant relies on *United States v. Calhoun*, 544 F.2d 291 (6th Cir. 1976). *Calhoun* is clearly distinguishable. In *Calhoun*, the defendant's parole officer was allowed to testify that Calhoun was the robber visible in a bank robbery surveillance photo. In finding the admission of this testimony to be an abuse of discretion, we grounded our holding on the fact that the defendant could not effectively cross-examine the parole officer without revealing their relationship and the defendant's prior criminal record. Although the decision does discuss the fact that the jury is able to make an identification determination from bank surveillance photos without help, this was not the basis of our reversal in *Calhoun*, nor did we hold it was error to allow such testimony when the complicating factors involved in *Calhoun* are not present.

It is also significant that Couch was not brought in just to testify as to the identity of the person in the bank surveillance photos, as was the parole officer in *Calhoun.* Couch did not even know the defendant. He was able to testify, however, that the defendant was the same person he saw eight days before the bank robbery acting in a manner which aroused Couch's suspicions to the point where he followed him in his automobile for the purpose of getting defendant's license number. In order to do so, he had to remove a brown paper bag which had been placed over the license plate. Couch subsequently filed an incident report which came to the attention of the FBI after the bank robbery. This prompted an FBI agent to show Couch the bank surveillance photos, and Couch identified the bank robber as the same person whose license plate number he had secured. By tracing the license plate number, the FBI was able to get a photo of defendant to use in a photo spread, which was the spread shown to Wozniak. We conclude that the testimony of Couch was relevant, its prejudicial effect did not exceed its probative value, and Fed.R.Evid. 404(b) is not implicated. This was not prior bad acts evidence, but was part of the investigative linkage which led the FBI to the defendant.

### III.

Section 3E1.1 of the Sentencing Guidelines provides that if a defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct," the offense level should be reduced by two levels. Defendant argues that this provision is unconstitutional because if he wants to pursue an appeal, it would be inconsistent to engage in a *mea culpa* before the trial court. In other words, how can one accept responsibility for something one maintains he did not do? Although this argument has a certain superficial logical appeal, it simply will not stand up under scrutiny.

To start with, it *might* be different if a defendant who would not accept responsibility had his sentence enhanced, but that is not the case. Courts historically have legitimately considered sincere remorse to be a factor allowing for some leniency. *Roberts v. United States,* 445 U.S. 552, 558, 100 S.Ct. 1358, 1363, 63 L.Ed.2d 622 (1980); *United States v. Rosenberg,* 806 F.2d 1169, 1179 (3d Cir.1986), *cert. denied,* 481 U.S. 1070, 107 S.Ct. 2465, 95 L.Ed.2d 873 (1987). The Guidelines do not introduce a new concept in this regard. The situation is no different from the consideration shown to a cooperating defendant. The government cannot compel a defendant's cooperation, but it can reward him if cooperation is forthcoming. There is no impediment to a defendant's right to appeal, which remains unfettered whether he displays remorse or not.

We also note that defendant's argument on this issue is not new. The same argument has been made to other courts which have uniformly upheld the constitutionality of section 3E1.1. *See United States v. Young,* 875 F.2d 1357, 1360–61 (8th Cir. 1989); *United States v. Thomas,* 870 F.2d 174, 177 (5th Cir.1989); *United States v. White,* 869 F.2d 822, 826 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989); *United States v. Belgard,* 694 F.Supp. 1488, 1497, 1498 (D.Or. 1988). In *Thomas,* the court stated:

> Of course, accepting responsibility for a crime entails admitting the crime, while trial strategies predicated upon a claim of innocence entail denial of the crime. A defendant who maintains her innocence at trial, and then purports to accept responsibility afterward, may have a difficult time persuading the trial judge that her later position is sincere rather then merely convenient. Cases where the convicted defendant succeeds may be rare as a factual matter, but they are not barred by law.

870 F.2d at 177.

We now join with those courts which have upheld the constitutionality of section 3E1.1.

**AFFIRMED.**