**UNITED STATES, Appellee,**

v.

**Mario Nelson PAZ URIBE,**
**Defendant, Appellant.**

No. 88–1813.

United States Court of Appeals,
First Circuit.

Heard Oct. 31, 1989.

Decided Dec. 13, 1989.

Rehearing Denied Feb. 1, 1990.

Martha R. Reeves, Boston, Mass., for defendant, appellant.

Jose A. Quiles, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.

Before TORRUELLA, Circuit Judge, COFFIN, Senior Circuit Judge, and PEREZ–GIMENEZ, District Judge.*

COFFIN, Senior Circuit Judge.

Mario Nelson Paz Uribe was indicted by a grand jury for the District of Puerto Rico on three counts: importing cocaine into the United States, possession with intent to distribute cocaine, and possession of cocaine on board an aircraft arriving in the United States. He was convicted by a jury on all three counts in March 1988. He appeals to this court, asserting numerous errors. We affirm the convictions.

## FACTS

On February 20, 1988, a flight from Bogota, Colombia to Frankfurt, Germany made a scheduled stop in San Juan, Puerto Rico. During that stop, United States customs officials made an inspection of the cargo area of the aircraft using a dog to

* Chief Judge of the District of Puerto Rico, sitting by designation.

detect the presence of narcotic drugs. The dog reacted to a brown suitcase, which was opened by a customs inspector. Inside, the official's attention was drawn to two plaques smelling strongly of glue and bearing Paz's name. Customs officials inserted probes into both plaques, producing a white powder that field tested as cocaine. After matching the claim tag from the suitcase with those of reboarding passengers, the officials arrested Paz.

Paz, who accompanied the officers without incident, claimed that he was en route to Greece to work for Royal Cruise Lines. He admitted that the plaques were his, but maintained that he had no knowledge that they contained cocaine. He said the plaques had been given to him by Royal Cruise Lines in recognition of his past services on board two ships, and that he had been directed by a company official to bring them with him to Greece so that one could be hung in a place of honor. He attributed the smell of glue detected by customs officers to the cleaning fluid used by his family in polishing the awards.

Paz reported that he had worked for Royal Cruise Lines from November 1978 through January 1985, and that he had been on an indefinite leave of absence that was now ending. He stated that family needs had forced him to cease travelling with cruise ships and that he had tried his hand at brief ventures in pig farming and shoe sales in the interim. He travelled outside Colombia six times between 1985 and February 1988, reportedly to do brief substitute stints on ships and to investigate the prospects of establishing a shipping agency.

The prosecution introduced evidence that Paz's suitcase contained, in addition to the plaques, a Royal Cruise Lines stamp, blank Royal Cruise Lines stationery and a "money detector," a device used to screen counterfeit bills. The government also showed that the plaques were made from mismatched china from the cruise lines, contained errors of English, and appeared to be homemade. In addition, Paz carried letters ostensibly verifying employment, employment contracts and letters to the American consul referring to shipboard employment between 1985 and 1988. But he admitted that the references and authorizations in these letters were erroneous and conflicting. From this evidence, the jury apparently believed that the documents were forged and that, despite his claims of innocence, Paz was knowingly smuggling cocaine.

We have distilled five issues from Paz' brief: (1) whether he received ineffective assistance of counsel because his attorney failed to make two crucial motions; (2) whether the court improperly denied his motion for acquittal at the end of the government's case; (3) whether the court incorrectly calculated his sentence; (4) whether the court improperly assumed the role of advocate in questioning him and prejudiced the jury; and (5) whether the trial court erred by not making a more extensive voir dire of jurors to establish their abilities to fully comprehend English. We address these claims seriatim.

## DISCUSSION

### I. *Ineffective Assistance of Counsel*

█ Paz alleges that he received ineffective assistance of counsel when his attorney failed to move to suppress the evidence resulting from the allegedly improper search of his luggage. He also suggests that, because he was unable to understand English, his attorney should have filed a motion in limine to exclude the use of the documents he carried to impeach him.

As we have recently reaffirmed, "it is ordinarily the rule that a claim of inadequate representation will not be determined on a direct appeal when the claim has not been raised in the district court." *United States v. Hoyos–Medina*, 878 F.2d 21, 22 (1st Cir.1989). This rule conserves judicial resources and assures that the judge in the best position to evaluate the quality of representation makes the initial determination. *Id.* If the defendant wishes to pursue this claim, he may begin a collateral proceeding in accordance with 28 U.S.C. § 2255 (1982). We decline, however, to consider it in this appeal.

## II. *Denial of Motion of Acquittal*

■ Paz moved for acquittal under Fed. R.Crim.P. 29 after the close of the government's case. He failed, however, to renew his motion after presenting evidence in his own behalf. By this omission, Paz waived his earlier motion. *United States v. Vest,* 842 F.2d 1319, 1330 (1st Cir.1988); *United States v. Notarantonio,* 758 F.2d 777, 788 (1st Cir.1985). Where there has been no properly preserved motion, we will overturn a conviction only on a showing of "clear and gross injustice." *United States v. Greenleaf,* 692 F.2d 182, 185 (1st Cir. 1985).

■ Paz clearly fails to meet this stringent standard. Taking the evidence in the light most favorable to the government, *United States v. Santiago,* 828 F.2d 866 (1st Cir.1987), we find that the government presented more than adequate evidence to prove Paz guilty beyond a reasonable doubt. He was found in possession of over 1000 grams of cocaine. The plaques in which the drug was secreted were obviously homemade and smelled strongly of glue. Paz' documentation was full of errors and appeared forged; he carried blank stationery and a company stamp with which he could forge documents. He also carried a money detector, indicating that he anticipated a need to detect counterfeit bills. Paz had travelled six times outside Colombia over three years, and offered only the vaguest explanations of his reasons and sources of funding for these trips.

Unquestionably, Paz related a story in which he was the innocent dupe of another. But it is the role of the jury "to determine which of the various proffered interpretations of the evidence is credible." *Santiago,* 828 F.2d at 870. A jury could reasonably have found his explanation incredible. On these facts, we fail to find a clear and gross injustice.

1. Section 3B1.2. Mitigating Role.
   Based on the defendant's role in the offense, decrease the offense level as follows:
   (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
   (b) If the defendant was a minor participant, decrease by 2 levels.

## III. *Improper Sentencing*

Paz argues that the court erred in sentencing him by not reducing his offense level downward either for his minimal or minor role in the offense[1] or for acceptance of responsibility.[2] He then claims that his failure to accept responsibility was improperly considered twice and that the guidelines unconstitutionally penalize the exercise of Fifth Amendment rights.

■ The first two arguments are clearly frivolous. Appellant claims that the court erred by not reducing the offense level to reflect his role as a minimal or minor participant. We will reverse the district court's finding that a defendant is not a minimal or minor participant only if it is clearly erroneous. *United States v. Wright,* 873 F.2d 437, 444 (1st Cir.1989). In this case, the jury had already expressed its disbelief of defendant's story by returning a verdict against him. Beyond defendant's story that another had tricked him into transporting the cocaine, there was no evidence of other participants in this importation. The judge's finding that Paz did not play a minimal or minor role was therefore eminently reasonable. Moreover, even if the court had found that Paz was only a courier, he would not automatically be entitled to a reduction. *United States v. Buenrostro,* 868 F.2d 135, 138 (5th Cir.1989). We affirm the decision of the district court not to reduce the offense level.

■ Paz next claims that he is entitled to a reduction for acceptance of responsibility even though he continues to deny his participation. He argues that, despite the jury's findings, the judge should have believed his story of events and given him credit in sentencing. We do not follow this argument. If Paz does not accept respon-

In cases falling between (a) and (b), decrease by 3 levels.

2. Section 3E1.1. Acceptance of Responsibility
   (a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.

sibility for committing the offense, he is not entitled to be treated as if he does.

■ Appellant also asserts that the district court improperly considered his failure to accept responsibility twice. He argues that double counting occurred when the court, having already determined that the level of his offense was correct, then considered his denial of responsibility in setting the most severe sentence within the guideline range. In other words, because the level of the offense was premised on there being no acceptance of responsibility, the district court could not again use this factor in deciding where to set Paz's sentence within the range authorized by the guidelines.

This argument misunderstands the sentencing guidelines. The guidelines were intended to reduce disparity in the sentencing of different defendants for similar offenses. *United States v. Mejia–Orosco*, 867 F.2d 216, 218 (5th Cir.1989). They do not, however, abrogate entirely the district court's discretion. The guideline range "allows the district court some latitude to fine tune the sentence to the individual defendant and the circumstances of the defendant's offense." *Id.* at 219.

In this case, the court applied the correct guideline range in sentencing. Due to the substantial amount of cocaine involved in the incident, the court properly decided that, in the absence of an acceptance of responsibility, it would set the defendant's sentence at the top of the range. This decision is well within the district court's discretion.

■ Appellant makes a final effort to attack his sentence by challenging the constitutionality of the provision that allows a reduction for acceptance of responsibility, section 3E1.1. He claims that this guideline places him in the unconstitutional dilemma of abandoning his right not to incriminate himself or risking a higher sentence.

The Eleventh Circuit has recently addressed this argument in *United States v. Henry*, 883 F.2d 1010 (11th Cir.1989). In *Henry*, the court rejected the defendant's

claim, finding that the guidelines merely codify a tradition of leniency and are not an impermissible burden on the exercise of constitutional rights. As the *Henry* court noted, the Supreme Court has clearly held that not every burden on a right or encouragement to waive a right is invalid. *Corbitt v. New Jersey*, 439 U.S. 212, 219, 99 S.Ct. 492, 497, 58 L.Ed.2d 466 (1978) (the possibility of a lesser sentence for acceptance of a plea bargain is not an unconstitutional burden); *see also Brady v. United States*, 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970) (a state may extend a benefit to a defendant who shows a willingness to accept responsibility). We follow the Eleventh Circuit in holding that the guidelines' provision for reduction of the offense level based on acceptance of responsibility is not unconstitutional.

### IV. *Improper Role of Judge As Advocate*

■ During the course of the defendant's trial testimony, the judge posed a series of questions concerning defendant's travels outside of Colombia. After his questions had been answered, the judge indicated that the prosecutor could continue, saying, "I have no doubt in my own mind now." Appellant asserts that the judge improperly usurped the prosecutor's function of cross examination and that the comment prejudiced the jury by revealing the judge's opinion.

Because no objection was made at trial, we must consider the remarks under the plain error doctrine. Fed.R.Crim.P. 52(b); *United States v. Williams*, 809 F.2d 75, 82 (1st Cir.1986) (citations omitted). To prevail, the defendant must show that "the issue is so compelling as virtually to insure [appellant's] success." *Id.*

As courts repeatedly have noted, the trial judge is more than a "mere moderator" in a federal trial. *United States v. Kandiel*, 865 F.2d 967, 973 (8th Cir.1989).

> [The trial judge] has the prerogative, and at times the duty, of eliciting facts he deems necessary to the clear presentation of issues. To this end he may examine witnesses who testify, so long as he preserves an attitude of impartiality and

guards against giving the jury an impression that the court believes the defendant is guilty.

*Llach v. United States,* 739 F.2d 1322, 1329–1330 (8th Cir.1984). The defendant's testimony was undeniably confusing concerning the dates of his employment and travel. The judge's questions were an attempt to clarify the sequence of events. In this context, the questions were not inappropriate. We would, however, caution judges to exercise great care in the use of phrases such as "I have no doubt." In a criminal trial, where possession of doubt is the critical standard jurors are instructed to apply, such a comment may be misunderstood.

In any event, the defendant was not prejudiced by the questions and comment. The conflict between the defendant's testimony and the documents he carried was apparent from prior and subsequent testimony. In addition, the judge carefully instructed the jury that his questions and comments were not to be taken as an indication of his opinion about the defendant's guilt or innocence. We believe that any possible prejudice was corrected by this instruction. However, even if there was some residual harm, it does not rise to the level of plain error.

## V.  *Voir Dire*

█ Appellant's final assertion that he was entitled to a more extensive voir dire on jurors' English abilities is plainly frivolous and merits little discussion. As we repeatedly have noted, "[e]xcept to avoid clear injustice, we are not disposed to entertain challenges of this nature after the trial." *Thornburg v. United States,* 574 F.2d 33, 36 n. 5 (1st Cir.1978). *See also United States v. Cepeda Penes,* 577 F.2d 754, 759 (1st Cir.1978). Defendant never requested a more extensive voir dire at trial. Nor were any juror comprehension problems apparent at trial. In addition, all quotations from the voir dire to which appellant refers us are from jurors who were not empaneled in this case. We reject appellant's claim of error.

## CONCLUSION

Having addressed all of appellant's contentions and discovered no error, we *affirm* the convictions.