<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 97-2084

                         UNITED STATES,
                           Appellee,

                               v.

                     CRUZ ROSARIO-PERALTA,
                A/K/A CRESCENCIO CEDEO-PERALTA,
                     Defendant, Appellant.

                      ____________________

No. 97-2085

                         UNITED STATES,
                           Appellee,

                               v.

                    JOHNNY DAVID DIAZ-MORLA,
                     Defendant, Appellant.

                      ____________________

No. 97-2086

                         UNITED STATES,
                           Appellee,

                               v.

                     RAMON ANTONIO JAVIER,
                     Defendant, Appellant.

                      ____________________

         APPEALS FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

       [Hon. Juan M. Prez-Gimnez, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                 Coffin, Senior Circuit Judge,

                   and Selya, Circuit Judge.
                                 
                     _____________________

   Jorge A. Toro McGowan for appellant Cruz Rosario-Peralta.
   Benjamn Angueira-Aguirre for appellant Johnny Daz-Morla.
   Zygmunt G. Slominski, by appointment of Court, for appellant
Ramn Antonio Javier.
   Michelle Morales, Assistant United States Attorney, with whom
Guillermo Gil, United States Attorney, and Nelson Prez-Sosa,
Assistant United States Attorney, were on brief, for appellee.

                      ____________________

                       December 23, 1999
                      ____________________

        TORRUELLA, Chief Judge.  Defendants Cruz Rosario-Peralta,
Johnny David Daz-Morla, and Ramn Antonio Javier appeal their
convictions and sentences for possession with intent to distribute
cocaine while on the high seas.  We addressed portions of these
appeals in our previous decision, United States v. Rosario-Peralta,
175 F.3d 48 (1st Cir. 1999).  In that opinion, we rejected
defendants' challenge to the sufficiency of the evidence, but we
found ourselves unable to properly assess defendants' claims of
discovery violations on the existing record.  Thus, we retained
jurisdiction of the case and remanded to the district court for the
resolution of several discovery issues.  On August 27, 1999, the
district court issued its findings in response to our instructions.  
Having received supplemental briefing from the parties, we now
resume our consideration of the remaining issues on appeal.
                           BACKGROUND
 We outlined the facts of this case at length in our
previous decision, see Rosario-Peralta, 175 F.3d at 50-51, and we
see no reason to repeat that entire account here.  Nevertheless, a
very brief review, focused on the facts relevant to today's
decision, will set the factual context for our current discussion.
 At approximately 1:11 a.m. on October 17, 1996, a United
States Customs Service aircraft spotted a vessel heading towards
Puerto Rico without any lights.  After monitoring the suspect
vessel for almost two hours, with the assistance of a United States
Army National Guard helicopter, the government agents illuminated
the suspect vessel and spotted its crew dumping bales, which later
proved to contain cocaine, into the ocean.  At trial, there was
testimony, contested by defendants, that the helicopter remained
over the suspect vessel and continued to illuminate it until it was
intercepted.  When a Customs vessel arrived on the scene and
identified itself, defendants' vessel accelerated until the Customs
vessel rammed it from astern.  Defendants Rosario-Peralta and
Javier then jumped into the water and refused to allow the Customs
crew to retrieve them for several minutes.  Defendant Daz-Morla
sped away in the vessel and was caught by a Puerto Rico Police
Department vessel.  After waiving their rights and agreeing to
speak to the agents, defendants gave conflicting and implausible
statements about how they came to be traveling at sea early that
morning.  Later, a drug-sniffing canine detected narcotics
contamination on defendants' vessel.
 Following their convictions, appellants appealed, and we
remanded to the district court for findings, as discussed above.  
We now consider those findings, as well as appellants' other
arguments on appeal.
                           DISCUSSION
I.  The District Court's Failure to Require the Government to
   Disclose Particular Communication Records and Logs

 A.  Our Prior Opinion and the District Court's Findings  
 In our earlier opinion in this case, we found that the
district court abused its discretion if it denied discovery of
certain communication records and logs on the ground that they were
irrelevant, when the district court had not reviewed the materials.  
See Rosario-Peralta, 175 F.3d at 55.  We also recognized the
possibility that the district court denied discovery of the logs
based on the need for confidentiality, rather than because the logs
were irrelevant, and we expressed reluctance to accept the
government's stated concern for confidentiality as a basis for
denying discovery of the logs.  See id. at 57 n.8.  We observed
that, because the district court denied discovery of the logs based
on either relevance or the need for confidentiality, the district
court did not determine whether the logs were required to be
disclosed under Fed. R. Crim. P. 16(a)(1)(C), Brady v. Maryland,
373 U.S. 83 (1963), or the Jencks Act, 18 U.S.C.  3500.  See id.
at 56.
 We then noted that, in an attempt to resolve the  
discovery issues on appeal, the government submitted a copy of what
it claimed to be the only relevant log: the October 17, 1996
morning log of the United States Command Center Sector for United
States Customs ("Sector").  See Rosario-Peralta, 175 F.3d at 56.  
We found it inappropriate to review the Sector log or to resolve
the remaining discovery issues for the first time on appeal, so we
remanded to the district court to perform both tasks.  See id.  We
instructed the district court to review the Sector log, as well as
any other potentially relevant logs, to determine: (1) whether the
logs should have been disclosed under Rule 16, Brady, or the Jencks
Act, and (2) if so, whether the government's failure to disclose
the logs materially prejudiced the defense.  See id. at 57.
 On August 27, 1999, the district court responded with a
four-page statement of its findings.  The district court found that
the logs at issue were: (1) the San Juan Sector Communication
Master Station Log for October 17, 1996; (2) the log for an unnamed
land-based agency codenamed "Razorback"; and (3) the log from the
Drug Interdiction Operations Center (codenamed "Salty Dog").  The
court reviewed these sets of logs and determined that they were
required to be disclosed by Rule 16(a)(1)(C) and also as Brady
material, but were not discoverable under the Jencks Act.  Finally,
the district court found that defendants were not prejudiced by the
government's failure to disclose the logs, because the information
to which defendants were entitled was made available to them
through other means, namely, the reporting data and FLIR videotapes
from Omaha 13, Omaha 85, and Hawk 514.
 B.  Appellants' Renewed Claims of Discovery Violations
 Although appellants agree with the district court's
determination that the logs were discoverable under Rule
16(a)(1)(C) and also under Brady, they claim that the court erred
in finding that all relevant information had been disclosed and
that the defendants suffered no prejudice from the nonproduction.  
After careful consideration of the parties' supplemental briefs on
this issue, we find no reversible error in the district court's
ruling.
 As a preliminary matter, we emphasize that the
government's failure to produce discoverable materials in this case
is a serious infraction which we do not condone.  There is no
dispute that the prosecution had access to these logs before and
during trial.  The sole basis offered by the United States for
resisting disclosure is the desire to maintain the secrecy of the
logs' code names, an objective that could have been easily and
effectively achieved through redaction without depriving the
appellants of information to which they were entitled under the
Rules of Criminal Procedure and federal case law.  Mindful of the
government's error, we will proceed to consider appellants' claims
of error by the district court.
 Appellants' first contention -- that the district court
could not know whether all relevant information was disclosed to
them through other means -- is their strongest.  The government's
response -- that appellants fail to "pinpoint" any information that
was not disclosed -- is clearly inadequate; appellants' very point
is that they do not and cannot know what exculpatory information
may have been on the logs, and yet the government expects them to
identify particular pieces of information to which the government
improperly denied them access.  Given the accidental destruction of
the Salty Dog log requested by the defense, we are inclined to
agree with the appellants that the district court was in a poor
position to determine with absolute certainty whether that log
contained any discoverable information that was not in fact
produced in another form.  However, we do not require "absolute
certainty" to support a trial court's determinations on the
discoverability of information under the federal rules nor under
Brady.  The district court's findings were made with the benefit of
written and oral argument from both sides and after the government
produced to the appellants and to the court all existing materials
that could reasonably have been expected to contain discoverable
information relevant to the motion to compel.  Because the
appellants have done little more than speculate as to what other
information the logs might have contained, we simply cannot hold
that the district court abused its discretion in finding that all
discoverable information had in fact been produced to the
defendants by other means.
 Whatever our nagging doubts regarding the completeness of
the information produced to appellants by other means, we are in
complete agreement with the district court that appellants were not
prejudiced by the failure to produce the logs.  The record amply
demonstrates that appellants were not impeded in the presentation
of their defense, and the substantial other evidence presented at
trial was such that the mere possibility of additional exculpatory
evidence in the logs is insufficient to call into doubt the
fairness of appellants' trial or the verdict reached by the jury.
 To succeed on their Rule 16 claim, appellants would have
to demonstrate prejudice resulting from the government's
nondisclosure.  See United States v. Spinosa, 982 F.2d 620, 630-31
(1st Cir. 1992).  Under Brady, they must demonstrate "a reasonable
probability that, had the evidence been disclosed to the defense,
the result of the proceeding would have been different."  Gilday v.
Callahan, 59 F.3d 257, 267 (1st Cir. 1995) (internal quotations
omitted).  Under either standard, the appellants have fallen well
short of the mark.  Although we are sympathetic to the difficulty
of demonstrating how information might have aided one's case
without ever seeing that information (or even knowing that it
exists), some showing, albeit imperfect, must be made before an
appellate court can reverse the reasoned decision of the trial
court, and appellants have offered us nothing of any substance upon
which to hang our proverbial hats.  Because the appellants have not
demonstrated prejudice from the government's failure to disclose
the logs, and in light of the substantial evidence supporting the
jury's guilty verdict, we affirm the district court's ruling.
II.  The District Court's Interference With the Testimony of
    Defendants' Expert
 Defendants next argue that the testimony of their expert,
Captain Edwin Geary, was rendered ineffective because the district
court interfered with his testimony.  Defendants complain that the
court: (1) interrupted and clouded Captain Geary's significant
findings; (2) questioned his calculations; (3) questioned his
testimony regarding hull speed; (4) confused the issues by
interrupting his testimony; (5) attempted to bolster or
rehabilitate the previous testimony of government witnesses;
(6) emphasized points helpful to the prosecution; (7) attacked
Captain Geary's credibility; and (8) communicated to the jury that
it did not believe the witness.  Defendants complain that the
court's interference rose to the level of advocacy and denied them
a fair trial by communicating to the jury that the court had taken
a side.
 The government responds that the district court merely
attempted to clarify vague and confusing testimony for its own
benefit and the benefit of the jury.  We have stated previously
that the trial judge is more than a "mere moderator" in a federal
trial and that the trial judge has the prerogative of eliciting
facts he deems necessary to the clear presentation of issues.  See
United States v. Paz Uribe, 891 F.2d 396, 400 (1st Cir. 1989).  
Thus, the judge "may examine witnesses who testify, so long as he
preserves an attitude of impartiality and guards against giving the
jury an impression that the court believes the defendant is
guilty."  Id. at 400-01 (quoting Llach v. United States, 739 F.2d
1322, 1329-30 (8th Cir. 1984)).  In Paz Uribe, we found that
testimony presented by the defendant was confusing and that the
district court acted appropriately in attempting to clarify the
testimony.  See id. at 401.
 Similarly, we find here that the district court
appropriately questioned the defense expert, while managing to
preserve an attitude of impartiality.  Captain Geary's testimony
was confusing in that it included numerous maritime calculations.  
The district court did interrupt several times to ask questions,
but the court also did so during the testimony of government
witnesses regarding the same subject matter.  The court asked
short, even-handed clarifying questions, albeit frequent ones, and
refrained from making any communications to the jury about Captain
Geary's credibility or calculations.  Nor did the district court
abandon its impartiality by rehabilitating the previous testimony
of government witnesses or emphasizing points helpful to the
prosecution, to the extent that it actually engaged in either
activity.  While, in asking its clarifying questions, the district
court may have raised issues that defendants would rather the jury
not focus on, it cannot be said that the district court did so to
benefit the government.  All issues raised in the district court's
questions were raised impartially and for the benefit of clarity
alone.  Thus, although trial judges are to be given the "widest
possible latitude" in making judgments about the need to clarify
testimony, Rodrguez v. Banco Central Corp., 990 F.2d 7, 12 (1st
Cir. 1992), we would reject defendants' arguments here even if we
were not required to grant such latitude.
III.  Evidence of Positive Canine Alert to Narcotics Contamination
 Defendants also object to the testimony elicited at trial
about the positive canine alert to narcotics contamination that was
given by Gator, a Puerto Rico Police canine, on board defendants'
vessel.  Defendants argue that: (1) the unreliable "dog sniff"
evidence should have been excluded under Federal Rule of Evidence
403 because its probative value was substantially outweighed by the
danger of unfair prejudice, and (2) the court should have allowed
defendants' counsel to voir dire the canine's handler, Agent Rafael
Ocasio-Cruz, outside the presence of the jury.
 A.  Federal Rule of Evidence 403
 We begin by noting that defendants have a difficult hill
to climb.  We review a trial court's Rule 403 balancing for an
abuse of discretion, and only in "extraordinarily compelling
circumstances" will we reverse the district court's judgment
concerning the probative value and unfair effect of the proffered
evidence.  See United States v. Gilbert, 181 F.3d 152, 160-61 (1st
Cir. 1999) (citing United States v. Shea, 159 F.3d 37, 40 (1st Cir.
1998)).         
 In arguing that dog sniff evidence has little probative
value, defendants cite United States v. Carr, 25 F.3d 1194 (3d Cir.
1994), for Judge Becker's concurring and dissenting opinion that
assails the reliability of dog sniff testimony in the context of
currency.  In that opinion, Judge Becker cites to numerous studies
and evidence that persuaded him that "a substantial portion of
United States currency now in circulation is tainted with
sufficient traces of controlled substances to cause a trained
canine to alert to their presence."  Id. at 1215.  We express no
opinion today regarding Judge Becker's view that a positive canine
alert to a particular bundle of currency has little probative value
because of the substantial amount of all currency that has been
tainted by illegal drugs.  Nevertheless, Judge Becker's discussion
is irrelevant to our analysis here.  The present case does not
involve a dog sniff of currency, which can easily and quickly
travel through several sets of unknown hands.  Rather, our case
involves a dog sniff of defendants' vessel.  Judge Becker's
analysis might have had some bearing on the present case if
defendants had offered similar studies indicating that the
circulation of nautical vessels is sufficiently similar to the
circulation of currency that a substantial portion of vessels are
also tainted with traces of controlled substances.  Because
defendants did not -- and perhaps cannot -- show such similarity,
the concern raised by Judge Becker does not undermine the
reliability of the evidence presented.
 Even so, defendants attempt to demonstrate that the dog
sniff evidence presented below was unreliable, and therefore
lacking in probative value, by listing facts elicited from Agent
Ocasio-Cruz on cross-examination.  Defendants claim that it was
established during Agent Ocasio-Cruz's cross-examination that
canines do not alert properly when they are sick.  However, what
Agent Ocasio-Cruz actually testified to was that Gator "act[s]
differently" when he is sick.  Defendants also claim that it was
established that canines cannot identify the substance for which
they are alerting, but the actual testimony was that the canines
give the same signal for each of four types of illegal narcotics.  
Defendants correctly characterize Agent Ocasio-Cruz's testimony
that: (1) the canine cannot determine the time at which the
contamination of the surface occurred; (2) the canine gives
different signals for alerts to specific and general areas; and
(3) the trainer must interpret the signal from the canine.  Agent
Ocasio-Cruz also testified that: (1) no drugs were found on the
vessel; (2) his report indicated a "possible presence of
contamination of controlled substance"; and (3) Gator only
scratched on the top of a small fiberglass box on the deck of the
vessel.  From this last fact, defendants argue that Gator alerted
to a small area (the fiberglass box) that could not have held the
large amount of narcotics involved in this case.
 Some of the facts elicited by defendants do demonstrate
that dog sniff testimony is not a perfect indicator of a particular
controlled substance in a particular, well-defined location at a
particular time.  After all, it is at least possible that Gator
alerted to the presence of a different controlled substance than
the cocaine found to have been dumped in the ocean that day.  Also,
it is possible that Gator alerted to a contamination that occurred
well before the bales of cocaine were alleged to have been aboard.  
And, due to Gator's less-than-perfect communicative abilities, it
is possible that Gator alerted to an area that was not precisely
identified by his handler.   
 However, these facts do not substantially diminish the
probative value of this testimony.  Agent Ocasio-Cruz testified
that Gator gave a positive alert to the presence of a controlled
substance on the deck of defendants' vessel.  Despite defendants'
attempts to demonstrate the contrary, Agent Ocasio-Cruz
specifically testified that Gator alerted to a contaminated area
that was larger than merely the fiberglass container.  While this
testimony is not perfect, it is extremely probative in a case in
which defendants claim that they were never in possession of the
cocaine.  No narcotics were found on the vessel, so the only way
the government could link the cocaine to defendants was by
demonstrating that defendants' vessel was the vessel that dumped
the bales of cocaine into the ocean when spotted by the National
Guard helicopter.  Defendants contested the officers' claims that
they saw defendants' vessel do the dumping, but the positive canine
alert corroborated the officers' testimony by demonstrating that an
allegedly unbiased canine indicated that a controlled substance
contaminated defendants' vessel.  Thus, the dog sniff testimony had
substantial probative value.
 Defendants offer little argument regarding the opposite
side of the Rule 403 equation: unfair prejudice, confusion of the
issues, or the potential for misleading the jury.  Defendants argue
that allowing this testimony enhanced the credibility of government
witnesses who claimed that defendants' vessel was the vessel they
saw dumping bales of cocaine, but defendants do not explain why
this was improper or unfair.  The admission of the dog sniff
testimony to corroborate the officers' testimony was undoubtedly
detrimental to defendants' defense, but that does not mean that it
is "unfair[ly] prejudic[ial]" under Rule 403.  See United States v.
Muoz, 36 F.3d 1229, 1233 (1st Cir. 1994) ("The damage done to the
defense is not a basis for exclusion; the question under Rule 403
is "one of 'unfair' prejudice -- not of prejudice alone.") (quoting
United States v. Moreno Morales, 815 F.2d 725, 740 (1st Cir.
1987)).  "The term 'unfair prejudice,' as to a criminal defendant,
speaks to the capacity of some concededly relevant evidence to lure
the factfinder into declaring guilt on a ground different from
proof specific to the offense charged."  Old Chief v. United
States, 519 U.S. 172, 180 (1997).  "'Unfair prejudice' within its
context means an undue tendency to suggest decision on an improper
basis, commonly, though not necessarily an emotional one."  Id.
(quoting Advisory Committee's Notes on Fed. Rule Evid. 403, 28
U.S.C. App., p. 860).  Defendants fail to raise or explain the
possibility of any such unfair prejudice.  Accordingly, defendants'
Rule 403 argument fails.
 B.  Refusal to Allow Voir Dire of Agent Ocasio-Cruz
 In the conclusion to the section of their brief arguing
that the district court erred in admitting the dog sniff testimony,
defendants baldly assert that the court also abused its discretion  
by not permitting defendants to voir dire Agent Ocasio-Cruz outside
the presence of the jury.  Nowhere in their brief do defendants
offer any argument or authority to demonstrate why it was error to
fail to allow voir dire outside the jury's presence.  When asked
about this contention at oral argument, defendants' counsel
responded that: (1) the testimony was prejudicial, and (2) there
was no reason for the jury to hear arguments of whether the
testimony was substantially more prejudicial than probative.  We
have already held that this testimony was not so prejudicial as to
require its exclusion under Rule 403, so we see no harm in allowing
the testimony to be heard before defense counsel could voir dire
Agent Ocasio-Cruz during cross-examination.   
 As for counsel's argument that the jury should not have
been exposed to arguments regarding the prejudice and probative
value of Agent Ocasio-Cruz's testimony, we find no instance in
which this occurred. The discussion of defendants' motion to
exclude this testimony took place at a sidebar bench conference.  
Defense counsel certainly attempted to undermine the value of this
testimony during cross-examination of Agent Ocasio-Cruz, but these
efforts at vigorous cross-examination were obviously appropriate
for the jury to hear.  Because we find that the testimony was
properly admitted, and because we find that the jury was not
subjected to inappropriate argument, we reject defendants' argument
that the district court should have allowed them to voir dire Agent
Ocasio-Cruz outside the presence of the jury.
IV.    Admission of Defendants' Post-Arrest Statements
 Defendants next argue that the district court erred in
admitting evidence of statements given by all three defendants
during their post-arrest interrogation.  Defendants argue that the
admission was improper for two reasons.  First, defendants claim
that the statements were not voluntary, despite defendants' signed
waivers of their rights.  Second, defendants contend that the
prejudicial effect of the statements substantially outweighed their
probative value under Rule 403.  We address the latter argument
first.
 A.  Federal Rule of Evidence 403
 Defendants argue that the relevancy of their statements
is far outweighed by the prejudicial effect of allowing the jury to
speculate and draw inferences of guilt.  Again, we believe that
defendants confuse harmfulness to their case with unfair prejudice.  
There is nothing improper about a jury drawing inferences about the
guilt of three defendants who gave inconsistent and incredible
statements about how they acquired their vessel and where they were
going.
 Further, these statements and the inconsistencies between
them were probative of the offenses with which defendants were
charged.  Defendants were charged with possession with intent to
distribute cocaine while on the high seas.  Therefore, the purpose
of defendants' early morning ocean voyage was quite relevant.  All
three defendants claimed that they were going fishing, but their
testimony was inconsistent as to the location in which they planned
to do so.  None of the three defendants claimed to know who owned
the vessel that they were using or how they happened to obtain the
keys to the vessel.  The inconsistencies in defendants' statements
and the implausibility of their claims of ignorance regarding the
origins of the vessel tended to show that their fishing explanation
was untrue.  If defendants lied about why they were in the vicinity
of the area in which the agents saw bales of cocaine being thrown
into the water, those lies could properly be seen by a jury as an
attempt by defendants to conceal their crime.  Thus, defendants'
statements were relevant.  Consequently, we reject defendants' Rule
403 argument in this context as well.   
 B.  Voluntariness of Defendants' Statements
 Defendants argue that their statements should have been
excluded because they were not made voluntarily.  Although the
ultimate issue of the voluntariness of a confession is a question
of law subject to plenary review, we will accept the district
court's subsidiary findings of fact unless they are clearly
erroneous.  See United States v. Burns, 15 F.3d 211, 216 (1st Cir.
1994) (citing United States v. Garca, 983 F.2d 1160, 1167 (1st
Cir. 1993)).
 The district court rejected defendants' voluntariness
arguments in denying their motion to suppress.  The court appeared
to accept the facts that the defendants may have been wet, the air
conditioning may have been on in the office, and the defendants may
have been hungry.  Nevertheless, the court accepted Agent Vicns'
testimony that: (1) it was calm in the room; (2) no one was making
any threats or forcing defendants to speak; (3) there were no loud
voices or indications of violence; (4) each defendant was advised
that he was being arrested for smuggling; (5) Agent Vicns asked
each defendant if he knew how to read and write; (6) each defendant
read the rights being waived or appeared to do so without
indicating that he could not read or write; (7) agents slowly and
carefully explained to each defendant in Spanish the rights being
waived; and (8) the defendants were asked after every explanatory
sentence if they understood their rights.  The court deemed this
sufficient to find that the waiver of rights was voluntarily and
knowingly made and therefore that the statements were voluntarily
made.
 Defendants' entire argument on appeal that the statements
were involuntary consists of the following: (1) defendant Javier
was dressed in shorts and was without a shirt; (2) Javier was
interrogated in the Customs office after paddling around for
several minutes in rough waters after the collision; (3) Javier was
never asked if he could read or write; and (4) Agents Vicns and
Lpez each signed defendants' waivers indicating that they
witnessed more than one waiver of rights at 5:00 a.m., even though
the three defendants were in separate cubicles.  
 Only one of these contentions alleges a fact that is at
odds with the district court's findings.  On the day after the
court's ruling, Agent Vicns testified that he did not ask Javier
whether he could read and write.  Even if we were to find that this
post-ruling evidence renders erroneous the court's finding that all
defendants were asked that question, we would not -- and do not --
disagree with the district court's ultimate finding that the waiver
and statements were given voluntarily.  The defendants were placed
under arrest at approximately 3:30 a.m. and did not sign their
waivers or give their statements until 5:00 a.m.  Therefore, we
place little emphasis on the effect of the collision on the
defendants at the time they made their statements approximately
ninety minutes later.  Defendants do not challenge the district
court's findings regarding the calmness of the room, the
explanation of defendants' rights, or the steps taken to ensure
that defendants understood those rights, and we agree with each of
those findings.  After conducting plenary review of this issue, we
find that defendants knowingly and voluntarily waived their rights
and voluntarily gave the statements that were admitted at trial.  
Accordingly, the district court did not err in admitting those
statements at trial.
V.  Admission of Evidence of the Street Value of the Cocaine
 Defendants complain that Agent Waldo Santiago was
permitted to testify to the "overestimated" street value of the
recovered cocaine:  one billion dollars.  Defendants contend that
the sole purpose of this testimony was to frighten the jury, infuse
emotional bias, and improperly instill the desire to convict.  
Defendants argue that the relevancy of this evidence is low,
because the intent to distribute could have been amply demonstrated
through testimony that defendants were seen throwing bundles from
the vessel.
 Citing United States v. Rivera, 68 F.3d 5 (1st Cir.
1995), cert. denied, 516 U.S. 1139 (1996), and similar cases from
other circuits, the government counters that such evidence of
street pricing is "routinely" admitted by courts in order to prove
the intent to distribute.  What this argument ignores, however, is
that such evidence could conceivably become substantially more
prejudicial than probative if the figure is large enough and if
other evidence to prove intent to distribute is available.
 We have little trouble accepting defendants' view that
the introduction of the one-billion-dollar street value was
prejudicial.  Whether that prejudice is unfair or not is a close
question.  The enormity of that figure could well evoke exactly the
type of fear and emotional response that Rule 403 seeks to avoid,
but that ability to frighten is only present because defendants
chose to smuggle such a substantial amount of cocaine.  It seems to
us at least awkward for defendants to argue that it was unfairly
prejudicial to shock the jury by informing them of the magnitude of
the offense.  However, while much of the shock value comes from the
magnitude of the offense, the spin the government attempts to put
on the offense by attaching the mammoth street value price tag
certainly adds (perhaps unnecessarily) to that shock value.
 In all events, evidence of the street value of controlled
substances is a widely accepted method of proving the intent to
distribute.  See, e.g., Rivera, 68 F.3d at 8 ("There is little
dispute that such information may aid in proving intent to
distribute."); United States v. Amaechi, 991 F.2d 374, 377 (7th
Cir. 1993); United States v. Pigrum, 922 F.2d 249, 254 (5th Cir.
1991).  While the district court could have required the government
to prove intent to distribute in another way, it had discretion to
admit the evidence that it did.  The district court balanced the
components of Rule 403 and found that the probative value of this
evidence was not substantially outweighed by the danger of unfair
prejudice.  We cannot say that the district court's decision fell
outside the boundaries of its considerable discretion.  Simply put,
this is not one of those sets of "extraordinarily compelling
circumstances" in which we would upset the balance struck by the
district court.  See Gilbert, 181 F.3d at 160-61.
VI.  Impartiality of the District Court's Instruction to the Jury
    at the End of the Fifth Day of Trial
 Defendants claim that the district court's May 16, 1997
instruction advising the jury not to discuss the case communicated
to the jury the court's belief that defendants were guilty.  
Defendants complain that the implication of the instruction was
that defendants were "dealing with drugs" and were "caught off
Fajardo."  Recognizing that they failed to object to the
instruction when it was given to the jury, defendants complain that
this instruction rose to the level of plain error.  See Fed. R.
Crim. P. 52(b) ("Plain errors or defects affecting substantial
rights may be noticed although they were not brought to the
attention of the court."); see also United States v. Paniagua-
Ramos, 135 F.3d 193, 197 (1st Cir. 1998) (subjecting the
defendants' complaints regarding an Allen instruction to plain
error analysis under Rule 52(b) because they failed to object in a
timely fashion).  The government does not respond to this argument.
 We first dispose of defendants' claim that the court
implied that defendants were "dealing with drugs."  What the
district court actually stated was that the jurors were allowed to
tell others only that they were jurors on a "case in federal court
dealing with drugs."  Thus, the court stated quite accurately and
impartially that the case dealt with drugs, not that the defendants
did.   
 The second quotation offered by defendants raises more of
a concern, but only slightly.  The court also told the jurors that
they could tell others that the defendants "were caught off Fajardo
or in the general area of the east."  We understand how defendants
could object to the use of the word "caught," which carries with it
the connotation that the individuals who were "caught" were guilty.  
It would have been preferable for the district court to have said
that the jury could tell others: (1) that the case was a drug case
dealing with individuals who were "arrested" near Fajardo, or (2)
that the case was a drug case in which the drugs were recovered
near Fajardo.  However, we are reluctant to require the district
court to engage in such semantic hair-splitting, especially in the
absence of a contemporaneous objection.  We do not agree that the
district court's perhaps imprecise choice of words communicated to
the jury a belief that the defendants were guilty.  Therefore, we
do not find that the district court committed any error in this
regard, let alone the "obvious" error affecting substantial rights
that is required by the plain error standard.  See United States v.
Olano, 507 U.S. 725, 732-34 (1993).  
VII.  The District Court's Refusal to Give an Instruction on
     Defendants' Theory of the Case
 Defendants next argue that the district court erred in
refusing to give their proposed instruction regarding their theory
of defense.  At the conclusion of trial, defendants submitted the
following "Special Charge on Theories of Defense":
   Also, as it relates to the facts and evidence
 in this case, the government must specifically
 prove, beyond a reasonable doubt, that thirty-
 one (31) bales were thrown overboard from a
 vessel approximately 18 to 20 nautical miles
 N.E. of Cabo San Juan, (Fajardo Light House)
 between the hours of 2:57 a.m. and 3:03 a.m.,
 on October 17, 1996, which bales were later
 retrieved and found to contain a controlled
 substance, to wit: cocaine.

   The government must also prove, beyond a
 reasonable doubt, that the 31 bales it claims
 were thrown out or dumped from the vessel it
 had been tracking, at approximately 2:57 a.m.
 and 3:03 a.m., on October 17, 1996, came from
 the same boat and vessel which was rammed and
 stopped at approximately 3:30 a.m., on
 October  17, 1996, approximately one and one
 half (1 1/2 miles off of Cabo San Juan,
 (Fajardo Light House) and upon which the
 defendants were found and arrested.

   Thus, in addition to having to prove, beyond a
 reasonable doubt, each and every one of the
 elements of the offense, as charged, the
 government must also prove, beyond a
 reasonable doubt, that the vessel which dumped
 the bales between the hours of 2:57 a.m. and
 3:03 a.m., was the same vessel upon which the
 defendants were found when it was rammed at
 approximately 3:30 a.m., approximately one and
 a half (1-1/2) miles off of Cabo San Juan,
 (Fajardo Light House).

   If you find that the government cannot prove,
 beyond a reasonable doubt, that the vessel
 which was tracked from approximately 1:11 a.m.
 until 3:03 a.m. was the same vessel as the one
 upon which the defendants were found when
 rammed at approximately 3:30 a.m., then you
 must find them not guilty and acquit each one
 of them of the offense and charge brought
 against them.

   Further, if you find that the government
 cannot prove, beyond a reasonable doubt, that
 the vessel upon which the defendants were
 found [] could have attained and sustained the
 average speed required for it to have traveled
 from the approximate point where the bales
 were reportedly dropped to the approximate
 point where the defendant's vessel was rammed,
 then you must find them not guilty and acquit
 each one of them of the offense and charge
 brought against them.  
 The district court refused to give the proposed
instruction because it was "replete with the evidence on the
record."  The district court stated several times that it was not
proper for the court to comment on the evidence and that it would
necessarily be doing so if it gave the proposed instruction.
 We disagree, in part.  We have repeatedly stated that
"the trial judge is not limited to instructions in the abstract.  
The judge may explain, comment upon and incorporate the evidence
into the instructions in order to assist the jury to understand it
in light of the applicable legal principles."  United States v.
Maguire, 918 F.2d 254, 268 (1st Cir. 1990) (citing Quercia v.
United States, 289 U.S. 466, 469 (1933)); see also United States v.
Burke, 948 F.2d 23, 28 (1st Cir. 1991).  There are limitations
placed on the trial judge's comments to prevent the judge from
assuming the role of a witness, misleading the jury, or distorting
or adding to the evidence.  See Maguire, 918 F.2d at 268-69
(quoting Quercia, 289 U.S. at 470).  Beyond that, however, the
trial judge may exercise her discretion in how best to assist the
jury.  On this basis, the district court likely could have given
the detailed, case-specific instruction that the defendants
requested, or otherwise simplified the somewhat prolix and
repetitive history of facts critical to identifying defendants'
vessel as the culprit.  See Leshore v. County of Worcester, 945
F.2d 471, 474 (1st Cir. 1991); Maguire, 918 F.2d at 268.
 Nevertheless, our determination that the proposed
instruction was not necessarily improper does not mean that the
district court was required to give the instruction to the jury.  
A defendant is entitled to an instruction on his theory of defense
if sufficient evidence is produced at trial to support the defense
and the proposed instruction correctly describes the applicable
law.  See United States v. Montaez, 105 F.3d 36, 39 (1st Cir.
1997) (citing United States v. McGill, 953 F.2d 10, 12 (1st Cir.
1992)).  However, the defendant is not entitled to a verbatim
reading of the requested instruction, and the court need not
instruct on every particular that conceivably might be of interest
to the jury.  See Montaez, 105 F.3d at 39.  Therefore, a trial
court's failure to deliver a theory of defense instruction will
result in reversal only if: (1) the requested instruction correctly
describes the applicable law; (2) sufficient evidence is produced
at trial to warrant the instruction; (3) the charge actually
delivered does not fairly present the defense; and (4) the
requested instruction was essential to the effective presentation
of the particular defense.  See id. (citing United States v.
Passos-Paternina, 918 F.2d 979, 984 (1st Cir. 1990)).
 Defendants appear to satisfy the first two elements.  At
bottom, defendants' theory of defense instruction, stripped of its
details, charges that the government must prove beyond a reasonable
doubt that defendants' vessel was the same vessel that government
agents tracked and witnessed dumping the thirty-one bales of
cocaine.  Because the government had to prove that the defendants
possessed the thirty-one bales of cocaine on the high seas, this is
essentially a correct statement of the government's burden in this
case.  And, although confusing, defendants did present evidence
that their vessel could not have been the vessel tracked by the
government agents between 1:11 a.m. and 2:50 a.m., due to the sea
conditions and the maximum sustainable speed of defendants' vessel.
 Where defendants stumble is in the third and fourth
elements of the standard.  The instruction delivered to the jury
does fairly present defendants' "wrong boat" defense, and the
proposed instruction was not essential to the effective
presentation of that defense.  The district court instructed the
jury that the government had to prove that the defendants knowingly
and intentionally possessed the cocaine with the intent to
distribute it.  The district court instructed the jury at length
regarding the definition of possession and what the jury needed to
find to render a guilty verdict.  These instructions adequately
covered the substance of the proposed instruction: that the
government must prove that it was defendants, and not the crew of
some other nearby vessel, that possessed the bales of cocaine.  
Because the district court's instructions adequately covered
defendants' theory of defense, there was no error in declining to
give their proposed instruction.  See McGill, 953 F.2d at 13.
 Additionally, defendants were able to effectively present
their "wrong boat" defense.  This was the clear theme of the
defense put on by defendants, as evidenced by its extensive
coverage at closing argument.  The district court's instructions
opened the door for the jury to give life to defendants' theme.  
The fact that the jury chose not to subscribe to this theory of the
case does not mean that defendants were precluded from effectively
presenting it.  Accordingly, we reject defendants' challenge to the
district court's instructions.
VIII.  Sentencing  
 Defendants raise several arguments protesting their
sentences, although many of them take the form of generalized
complaints that are not tied to any particular sentencing
calculation.  We review the district court's findings of fact
during sentencing for clear error, see United States v. Aker, 181
F.3d 167, 171 (1st Cir. 1999), and we review its determinations of
law under the Sentencing Guidelines de novo.  See United States v.
Ticchiarelli, 171 F.3d 24, 35 (1st Cir. 1999).  

 A.  District Court's Remarks Regarding Conspiracy
 Defendants first argue that the court erroneously
believed that this was a conspiracy case.  They point to the
court's statement that "all three of them participated in this
conspiracy to import 1,040 kilograms of cocaine."  Defendants do
not, however, explain how this alleged error affected their
sentences.  They do not argue that the district court used the
wrong sentencing guideline in calculating their base offense level.  
Nor do they argue that this alleged erroneous belief caused the
district court to apply any improper enhancements or to deny any
appropriate reductions.  After reviewing the entire sentencing
record, it is clear to us that the district court engaged in the
proper analysis and merely spoke colloquially when it referred a
single time to the "conspiracy to import".  Thus, we reject
defendants' contentions that the court erroneously treated this as
a conspiracy case.
 B.  Undue Influence
 Defendants also argue that the district court was unduly
influenced by two factors: (1) the amount of cocaine involved and
(2) deterrence of other potential offenders.  Again, defendants do
not explain why the district court erred by considering these two
factors or how this alleged error actually impacted their
sentences.   
 The amount of the controlled substance is not only a
relevant concern at sentencing, it is the most critical factor used
to determine the proper base offense level.  See U.S.S.G.
2D1.1(c) (Drug Quantity Table).  Accordingly, the court clearly
did not err in considering this factor.  To the extent that
defendants argue that the district court was influenced by the
amount of the controlled substance to sentence them at the upper
end of the guidelines range, we offer two responses.  First, we
have no appellate jurisdiction to review a sentence within the
applicable sentencing guidelines range if that range was correctly
determined.  See United States v. Panet-Collazo, 960 F.2d 256, 261
(1st Cir. 1992).  Second, even if we did, we would find nothing
wrong with imposing a high-end sentence based on this factor.  The
highest base offense level under  2D1.1 for a violation of 46
U.S.C. App.  1903(a) in which no death or serious bodily injury
occurred is Level 38, the level attributed to defendants.  This
level is achieved by possessing 150 kilograms of cocaine, and
defendants possessed almost seven times that amount.  There is
nothing improper about a district court considering a sentence at
the upper end of the sentencing range for an offense involving a
substantially greater quantity of cocaine than that involved in the
standard offense meriting a base offense level of 38.
 Our conclusions do not differ with regard to the district
court's stated concerns regarding deterrence.  Defendants do not
argue that the court's deterrence concerns caused it to err in
determining the proper sentencing range.  Rather, defendants merely
argue that the court's comments regarding deterrence "reflect an
unfounded instinct for harsher punishment."  To the extent that
this is an argument that the court's deterrence concerns resulted
in a high-end sentence, we again lack jurisdiction, see Panet-
Collazo, 960 F.2d at 261, and we again fail to share defendants'
outrage over the use of this factor.  In fact, 18 U.S.C.
3553(a)(2)(B) expressly directs the district court to consider
the need for adequate deterrence when imposing a sentence.  For
these reasons, defendants' claims of undue influence fail.
 C.  Escape
 Defendants next argue that the district court erred in
finding that they attempted to flee the scene when they were
apprehended.  Yet again, defendants fail to explain to the Court
how they were harmed by this alleged error.  In any event, the
district court's finding was not clearly erroneous.  The court
heard testimony that: (1) the crew of the Customs vessel pursuing
defendants' vessel identified themselves as police officers;
(2) defendants' vessel stopped and then accelerated; (3) Rosario-
Peralta and Javier jumped into the water when the Customs vessel
rammed their boat; (4) Rosario-Peralta and Javier attempted to swim
away and remained in the water to avoid boarding the Customs
vessel; (5) Daz-Morla sped away when the Customs vessel stopped to
retrieve Rosario-Peralta and Javier; and (6) Daz-Morla initially
failed to heed orders to stop and eventually stopped only when
agents threatened to neutralize the vessel's engines.   
 Rosario-Peralta and Javier claim that it is unreasonable
to conclude that they were trying to escape, given that they went
overboard a mile and a half offshore.  While it may in fact have
been unreasonable for Rosario-Peralta and Javier to think that
their escape attempt would be successful under those circumstances,
the district court's finding that escape was on their minds is
still the most reasonable interpretation of the events.  Daz-Morla
claims that he was not trying to escape either; he was merely
maneuvering the vessel in response to the collision caused by the
Customs vessel.  Given the testimony to the contrary, this argument
is equally unsuccessful in demonstrating clear error in the
district court's finding of attempts to escape.
 D.  Acceptance of Responsibility
 Each defendant claims that the court erroneously denied
him a two-level downward adjustment under U.S.S.G.  3E1.1(a) for
acceptance of responsibility.  This adjustment is applicable when
"the defendant clearly demonstrates acceptance of responsibility
for his offense."  U.S.S.G.  3E1.1(a).  The district court's
decision to withhold a reduction in the offense level will not be
overturned unless clearly erroneous.  See United States v.
Gonzales, 12 F.3d 298, 300 (1st Cir. 1993).  The burden is on the
defendant to demonstrate that he or she should have received the
reduction.  See United States v. Uricoechea-Casallas, 946 F.2d 162,
167 (1st Cir. 1991).   
 Defendants greatly diminished their chances for receiving
this adjustment by pleading not guilty and proceeding to trial.  
See U.S.S.G.  3E1.1, Application Note 2 ("This adjustment is not
intended to apply to a defendant who puts the government to its
burden of proof at trial by denying the essential factual elements
of guilt, is convicted, and only then admits guilt and expresses
remorse.").  However, there are "rare situations" in which a
defendant may clearly demonstrate an acceptance of responsibility
for his criminal conduct even though he exercises his
constitutional right to trial.  Id.    
 Neither Rosario-Peralta nor Daz-Morla presents this
Court with such a "rare situation" because, even now on appeal,
they maintain their factual innocence.  Thus, they are not entitled
to a downward adjustment for acceptance of responsibility.  See
United States v. Dodd, 111 F.3d 867, 870 (1st Cir. 1997) (affirming
the district court's denial of a reduction for acceptance of
responsibility based on the defendant's "continued denial of
factual guilt"); United States v. Prez-Prez, 72 F.3d 224, 228
(1st Cir. 1995) (finding no error in the district court's denial of
a  3E1.1(a) adjustment when the defendant declared his innocence
at sentencing).
 Defendants object to this result, claiming that they
cannot be punished for preserving their constitutional right to
appeal by maintaining their innocence.  We join the circuits that
have rejected this claim and found that  3E1.1 does not prejudice
or penalize a defendant for exercising his right to appeal.  See,  
e.g., United States v. Davis, 960 F.2d 820, 829 (9th Cir. 1992);
United States v. McDonald, 935 F.2d 1212, 1222 (11th Cir. 1991);
United States v. Monsour, 893 F.2d 126, 129 (6th Cir. 1990).  
Although we have not previously addressed the precise issue raised
by defendants, our decisions on closely related questions have
recognized the principles underlying the decisions of our sister
circuits on this issue.  For instance, in United States v. Muoz,
36 F.3d 1229, 1236-37 (1st Cir. 1994), we rejected the appellant's
argument that his constitutional right to trial was infringed when
the district court refused to grant him a  3E1.1 reduction because
he had proceeded to trial rather than plead guilty.  While
recognizing the difficult choice presented to a criminal defendant,
we stated that "not every burden on the exercise of a
constitutional right, and not every pressure or encouragement to
waive such a right, is invalid." Id. (quoting Corbitt v. New
Jersey, 439 U.S. 212, 218 (1978)).  In United States v. Paz Uribe,
891 F.2d 396, 400 (1st Cir. 1989), we upheld the constitutionality
of  3E1.1 against a challenge brought under the Fifth Amendment,
stating that the Sentencing Guidelines "merely codify a tradition
of leniency and are not an impermissible burden on the exercise of
constitutional rights."
 Furthermore, as noted by the Sixth Circuit in Monsour,
this is not a case in which a defendant's punishment has been
increased for failure to accept responsibility.  See id.  Instead,
defendants who choose to demonstrate remorse are granted special
leniency.  The fact that  3E1.1 forces defendants to make a
difficult choice simply does not violate their constitutional
rights to trial or to an appeal.  See Muoz, 36 F.3d at 1236-37;
Davis, 960 F.2d at 829.  Thus, we reject defendants' arguments in
this regard.
 Defendant Javier raises a somewhat different argument.  
He claims that he did in fact express remorse and accept
responsibility for his conduct when he stated, "I feel very bad
about the position I am in and I wish you would consider me."  
However, Javier made no mention of the crime in this short
statement and did not express regret over any actions he has taken.  
Rather, he appeared to express displeasure with the consequences of
being convicted of the crime.  As such, Javier's statement falls
far short of "clearly demonstrat[ing] an acceptance of
responsibility for his criminal conduct."  U.S.S.G.  3E1.1,
Application Note 2.
 Perhaps recognizing this, Javier claims that the district
court "cut him off" before he could finish.  Citing United States
v. De Alba Pagn, 33 F.3d 125 (1st Cir. 1994), Javier complains
that the district court thereby denied him his right to allocution.  
In doing so, Javier misrepresents the situation as it occurred
during the sentencing hearing.  When the district court asked both
Javier and his counsel if they wished to make any factual
corrections to the pre-sentence report, Javier took the opportunity
to make the statement quoted above.  The court then told Javier
that "[w]e will get to that."  Minutes later, the district court
specifically asked Javier if he wanted to say anything before the
sentence was pronounced.  Javier replied, "No."  Therefore,
Javier's claim that he was denied his right of allocution has no
basis in fact.  Javier was free to express remorse and accept
responsibility for his criminal conduct, but he chose not to do so.  
Thus, we will not now declare that he should have been given a
downward adjustment under  3E1.1.
 E.  Role-in-the-Offense Adjustments
 Each defendant also claims that he should have been given
a role-in-the-offense reduction because his role was equivalent to
that of a "minimal" or "minor" participant.  Guideline Section
3B1.2 provides a four-level reduction for minimal participants
(those "plainly among the least culpable of those involved in the  
conduct of a group") and a two-level reduction for minor
participants (those "less culpable than most other participants,
but whose role could not be described as minimal").  See U.S.S.G.
3B1.2, Application Notes 1, 3.  We will reverse the district
court's finding that a defendant is not a minimal or minor
participant only if it is clearly erroneous.  See United States v.
Gonzlez-Soberal, 109 F.3d 64, 73 (1st Cir. 1997) (citing Paz
Uribe, 891 F.2d at 399).
 Defendants claim that they: (1) lacked knowledge of the
scope and structure of the offense; (2) performed only
unsophisticated tasks; (3) did not make any decisions that were
material to the offense; and (4) possessed little, if any,
supervisory responsibility.  In making these arguments, defendants
make the same mistake they accuse they district court of making.  
Defendants were not convicted of conspiracy offenses; they were
convicted of possession with intent to distribute cocaine while on
the high seas in violation of 46 U.S.C. App.  1903(a), (b)(1) and
(f).  Thus, it matters little to this analysis whether defendants
knew the structure of or substantially participated in an alleged
overall drug conspiracy.  The fact that defendants may or may not
have been a smaller part of a larger conspiracy does not diminish
their role in the cocaine possession offense charged here.  
Defendants were the only three individuals aboard the vessel that
carried the cocaine, and, as the district court found, there was
little or no evidence that one of the defendants was comparatively
less culpable than the other two.  Defendants' showing is
insufficient to demonstrate clear error in the district court's
decision.  See United States v. Coneo-Guerrero, 148 F.3d 44, 50
(1st Cir. 1998) (rejecting the defendants' arguments that they, as
mere transporters of cocaine, were less responsible for importing
and possessing cocaine with intent to distribute than other,
unnamed participants with allegedly greater responsibilities),
cert. denied, 119 S. Ct. 1511 (1999).
                          CONCLUSION
 Based on the foregoing, we affirm the judgment of the
district court.

</body>

</html>